IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

AMERICAN FAMILY ASSOCIATION PLAINTIFF

v. CASE No. 4:26-cv-493 JM

KIM CARMICHAEL and
RAQUEL STRINGFELLOW DEFENDANTS

ORDER

A former Transfer on Death (TOD) beneficiary of a Merrill Lynch account bring this action against the deceased account owner's caregivers. Plaintiff American Family Association (AFA) filed this action against mother and daughter caregivers, Kim Carmichael and Raquel Stringfellow, after the mother ended up with 80% of the funds that had once been in the Merrill Lynch account. The complaint asserts claims of undue influence seeks imposition of a constructive trust. Pending is Defendants' motion to dismiss for failure to state a claim. (Doc. No. 4). AFA has responded, and Defendants filed a reply.

AFA is a Mississippi nonprofit corporation with its principal office in Tupelo, Mississippi. It filed this action in the Circuit Court of Cleburne County, Arkansas. Prior to being served, Defendants, both Arkansas residents, filed a notice of removal based on diversity jurisdiction. 28 U.S.C. § 1332(a). The Court is satisfied that the amount in controversy exceeds the jurisdictional threshold and that it has jurisdiction over this matter

Factual Allegations

Lena Linn was 98 years old when she died in April of 2025. She was predeceased by her husband, had no children, and no family member is involved in this dispute. Linn began donating to AFA in 1994. The donations were relatively small, ranging from $10 up to $400, for a total of $3,200 over approximately 30 years. (Exhibit D to the complaint; Doc. 1 at 36). In September of

2017, Linn executed a will leaving her estate to her husband, if he survived her, otherwise to two nieces. If neither of the nieces survived her, Linn named AFA as a remainder beneficiary. Linn executed another will in May of 2020. She again left everything to her husband but otherwise changed her will to leave "all the assets in her Merrill Lynch account" to AFA with the remainder of her estate going to her two nieces. In December of 2020, Linn executed a TOD beneficiary form naming AFA on the ML account.

At some point before Linn's husband died in September of 2020, Defendants Kim Carmichael and Raquel Stringfellow became in-home caregivers for the Linns. The following year, in October of 2021, Linn created a revokable trust and executed a new will leaving all her assets to the revokable trust. In this newest will, she nominated non-party Michael Jett as personal representative under the will and successor trustee to herself in the trust.[1] In the trust, she left her home to her two nieces. She specifically lists her Cadillac, four National Bank CDs, and certain stock to go to Carmichael. She lists other stock and the contents of her home to go to Stringfellow. She left certain stock to an individual named Jimmy Paul Scott, who she also named as residual beneficiary. (Doc. 1 at 47). AFA was not mentioned in the trust nor was the ML account by name. At the same time, Linn appointed Carmichael as her attorney-in-fact over healthcare decision and gave her power of attorney over her property in the event of her disability or incapacity.

In March of 2022, Linn executed a new pour-over will and amended the trust to leave her home to Stringfellow (instead of her nieces) and to add Stringfellow as co-beneficiary with Carmichael on the four National Bank CDs. She left Jimmy Paul Scott as the residuary

---

[1] Linn also nominated the attorney who helped her draft these instruments, Rebecca Prince, as a successor administrator and trustee.

beneficiary and added Julia Scott.

In May of 2023, Linn sent a note to AFA telling them it was a beneficiary in her trust.[2] (Doc. 1 at 38). Four months later, she made her last donation to AFA ($400).

On October 10, 2024, Linn called ML and gave ML permission to talk with Stringfellow about her account. Stringfellow requested a change of TOD beneficiary form to add herself and Samaritan's Purse (a non-party humanitarian aid organization) as 50/50 beneficiaries of the account. In this conversation, Stringfellow falsely told the ML employee that AFA no longer existed. Later ML contacted Linn's estate attorney Rebecca Prince, who Linn had previously authorized to speak to ML. Both ML and Prince expressed concerned that Linn was being taken advantage of. On October 31, 2024, Linn and Carmichel called ML and requested the balance in her account. The ML agent asked Linn if she knew approximately how much was in her account. She did not. In December 2, 2024, suspicious about the request for a change of TOD form from a long-time beneficiary to a caregiver and about the amount of money being paid to Stringfellow that year, ML ultimately refused the TOD form submitted for Linn's account.

In January of 2025, Carmichael submitted a new power of attorney to ML which specifically gave Carmichael authority to act for Linn in "all matters relating to my Merrill Lynch account," including the power to change beneficiaries. On February 12, 2025, Linn opened a new account at Charles Schwab, naming Stringfellow (80%) and Samaritan's Purse (20%) as TOD beneficiaries. Later that month, Linn submitted a form to ML requesting that her account funds be transferred to the new Schwab account. On March 14, 2025, the funds in the ML account—$3,311,524.00—were transferred to the Schwab account. Linn died twenty-seven

[2] The facts as alleged by AFA and the exhibits attached to its compliant do not establish that it was a named beneficiary in her trust at that time, though the allegations do support the inference that it was still listed as the TOD beneficiary on her ML account.

days later.

AFA alleges that at the time the funds were transferred, Defendants were in a confidential relationship with Linn, that they used their position of trust to isolate Linn from family, made false statements to her about her family and about AFA, and made false statements about how they were using her funds. It also alleges that Linn was "under hospice care from the spring of 2024 until she died on April 30, 2025." (Doc. 2, ¶ 59). AFA asserts that but for Defendants' undue influence, AFA would have remained the sole beneficiary of the ML account. As a result of the undue influence, AFA alleges that Defendants are being unjustly enriched and requests that a constructive trust be imposed on the funds previously in the ML account.

Legal Standard

A complaint must contain "a short and plain statement of the claim that the pleader is entitled to relief" to survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 8(a)(2). The Court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." *United States v. Any & all Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000). The complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests and must also "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570).

Analysis

In their motion to dismiss, Defendants argue that as a TOD beneficiary of Linn's ML account, AFA did not have a legally protectible interest in the funds that were transferred during Linn's lifetime to a different account. They rely on two Arkansas cases. In *Ginsburg v.*

*Ginsburg*, 195 S.W.3d 898 (Ark. 2004) ("*Ginsburg II"*), the Arkansas Supreme Court noted that "[p]ursuant to [Ark. Code Ann.] section 28–14–106, the designation of a TOD beneficiary on a registration in beneficiary form has no effect on ownership until the owner's death; thus, a registration of a security in beneficiary form may be cancelled or changed at any time by the owner without the consent of the beneficiary. *Id* at 901. In *Mickles v. Milam*, 603 S.W.3d 577 (Ark. App. 2020), the Arkansas Court of Appeals held that the subject TOD agreement prohibited a TOD beneficiary from receiving any assets that the account holder or his agent transferred out of the TOD account prior to the account holder's death, therefore, the designated beneficiary of a TOD account had "absolutely no rights or interest in the account until [the account holder's] death." *Id.* at 582.

In response, AFA argues that the cases Defendants rely on are not relevant. *Ginsburg*[3] did not address the rights of a former TOD beneficiary "to challenge a change in the designation" on the basis of undue influence.[4] The issue in *Ginsburg* was whether a husband had fraudulently transferred marital assets to an investment account naming his children as TOD beneficiaries after divorce proceedings had been filed. While the facts of the case are not on point, the law regarding TOD accounts certainly is.

AFA likewise argues that *Mickles* is not relevant. Linda Mickles was a TOD beneficiary on an account owned by her friend Gary Stiles. One month before Stiles's death, Deborah Milam opened a new account naming herself and Stiles as joint owners with right of survivorship. She subsequently transferred securities valued at $78,169.40 from the TOD account to that joint

---

[3] Discussing both *Ginsburg II* and also "*Ginsburg* I," 120 S.W.3d 567 (Ark. 2003), which Defendants did not cite.

[4] AFA's characterization here does not accurately reflect the complaint's challenge to the transfer from the ML TOD account to the Schwab joint account—there is no allegation that a change of TOD beneficiary designation at ML occurred.

account, leaving $4,379.95 in the TOD account. At the time she took these actions, Milam held power of attorney for Stiles. Mickles sued Milam, initially claiming tortious interference with Mickles's business expectancy, a recognized tort. Milam filed a motion to dismiss for failure to state a claim for tortious interference with a business expectancy. In her response, Mickles urged the court to recognize the tort of interference with an expected inheritance. The trial court declined to extend Arkansas law to recognize the new tort and granted Milam's motion to dismiss the claim for interference with a business expectancy.

The Arkansas Court of Appeals affirmed. In its opinion, the court initially recognized that the Arkansas Supreme Court "has expressly declined to recognize tortious interference with an inheritance expectancy." *Id*. at 582. Then it went on to explain why, even if it did, Mickles had not stated a claim for the tort. Pulling from the Restatement (Second) of Torts, the Court stated: "As an element of tortious interference with inheritance expectancy, a plaintiff must prove that the defendant 'by fraud, duress or other tortious means intentionally prevent[ed] [the plaintiff] from receiving from a third person an inheritance or gift that [s]he would otherwise have received' but for the tortious interference. *Mickles* at 582 (quoting Restatement (Second) of Torts § 774B). The court went on to state that "the alleged facts must be sufficient to prove, among other things, that the plaintiff expected to receive the inheritance or gift 'to a reasonable degree of certainty' but for the alleged interference. *Id.* (quoting Restatement (Second) of Torts § 774B notes). Even if the tort was recognized in Arkansas, the Court stated that Mickles "must have alleged that she reasonably expected to obtain not just the account but a sum certain in the account upon the death of Stiles." *Id.* The complaint, however, "does not allege facts sufficient to show that she ever expected the TOD account to contain over $80,000. In fact, . . . she had no reasonable expectation of any sum certain in the TOD account." *Id.*

Foremost, AFA states that *Mickles* is not relevant since AFA denies that it has made a claim for interference with inheritance expectancy. "Rather it is alleging that Defendants engaged in actions that unduly influence[d] Lena Linn to close her Merrill Lynch account and transfer those funds in that account to a Charles Schwab account in which [Stringfellow] was named an 80% beneficiary." (Doc. 8 at 7). However, AFA goes on to state that if it *had* stated such a claim, it believes the Arkansas Supreme Court would recognize the tort in this situation. AFA points out that unlike the plaintiff in *Mickles*, it did allege facts demonstrating that Defendants' interference was tortious. However, as in *Mickles, AFA* makes no allegation that it ever had any knowledge of how much it stood to receive from the TOD account had the funds not been transferred to another account. It has stated no "reasonable expectancy of any sum certain in the TOD account." To the extent that AFA alternatively argues a claim of interference with an inheritance expectancy, the Court assumes without deciding that the Arkansas Supreme Court would recognize the tort under certain circumstances[5], but finds that AFA's claim would fail here.

For the reasons stated in Defendant's motion to dismiss as discussed above, the Court finds that AFA has failed to plead sufficient facts for which relief can be granted. Defendants' motion to dismiss (Doc. No. 4) is GRANTED. A separate judgment will be entered.

IT IS SO ORDERED this 17th day of August, 2026.

United States District Court Judge

[5] *See Yeary v. Baptist Health,* No. 4:06CV01702 JLH, 2008 WL 110854 (E.D. Ark. Jan. 7, 2008) (Judge Holmes likewise "assumed, without deciding, that Arkansas would recognize the tort of intentional interference with an inheritance" under the circumstances presented in that case but that Plaintiff had not established an essential element.)